IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM AVERY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:23-cv-703-ECM |
| | ) | [WO] |
| HYUNDAI MOTOR | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Now pending before the Court is Defendant Hyundai Motor Company, Inc.'s ("HMC") motion to dismiss the complaint brought by Plaintiffs William Avery and Kyejuana Avery (collectively "the Plaintiffs"). (Doc. 26).  The Plaintiffs filed a response on July 23, 2024, in opposition to HMC's motion (doc. 33),[1] and HMC replied on July 30, 2024 (doc. 35).

While the motion to dismiss was pending before the Court, the Plaintiffs filed a motion to compel and motion for jurisdictional discovery (doc. 39), which HMC opposed (doc. 42).  The Plaintiffs filed a reply on October 29, 2024. (Doc. 43).

---

[1] The Plaintiffs also filed a motion for oral argument (doc. 34), but the Court finds oral argument unnecessary and rules on the parties' submitted briefs.  The motion for oral argument, therefore, is due to be DENIED.

For the following reasons, the motion to dismiss is due to be GRANTED, the Plaintiffs' claims are due to be dismissed without prejudice, and the Plaintiffs' motion to compel and motion for jurisdictional discovery are due to be DENIED.

## II. BACKGROUND

The Plaintiffs filed this action against Defendants Hyundai Motor Manufacturing Alabama, LLC ("HMMA"), Hyundai Motor America, Inc. ("HMA"), and HMC (collectively "the Defendants") on November 2, 2023, in Montgomery County Circuit Court. (*See* doc. 1-3 (original complaint)).  HMC is a corporation organized and existing under the laws of the Republic of Korea ("Korea").  In the complaint, the Plaintiffs allege Kyejuana Avery sustained injuries on December 1, 2021, after William Avery's 2017 Hyundai Tucson's engine suddenly "ignited and flames from the engine entered the passenger cabin." (Doc. 1-3 at 7, para. 12).[2]  Because of the flames, the complaint contends Kyejuana Avery suffered injuries that required medical treatment as she fell onto the pavement while escaping from the vehicle. (Doc. 1-3 at 7–8, paras. 13–14).  For William Avery, the complaint alleges he suffered property damage to his vehicle because of the fire. (Doc. 1-3 at 9, para. 23).

On December 6, 2023, HMA filed a notice of removal in this Court, which noted that "HMC has not been properly served in this action." (Doc. 1 at 3).  The Magistrate Judge ordered the Plaintiffs to file proof of service of process on the Defendants on or before February 23, 2024. (Doc. 10).  The Plaintiffs submitted affidavits of service for

---

[2] Page numbers reflect the Court's ECF filing system.

HMA and HMMA on February 15, 2024, that showed HMA was served on November 6, 2023, (doc. 11), and HMMA was served on November 7, 2023 (doc. 12).  After providing the affidavits showing service, the parties filed a joint motion which stipulated that HMMA was not a proper party to the case because it had no role in the manufacturing of William Avery's vehicle, (doc. 18), and the Court dismissed HMMA with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) on March 22, 2024, leaving the claims against HMC and HMA intact (doc. 21).[3]  Two weeks later, on April 5, 2024, the Court ordered the Plaintiffs to show cause why HMC should not be dismissed for failure to prosecute because the Plaintiffs had not filed proof of service on HMC. (Doc. 22).  On April 11, 2024, the Plaintiffs responded to the show cause order but neglected to file proof of service. (*See* doc. 23).

In their response to the April 11, 2024 show cause order, the Plaintiffs claimed they attempted to serve HMC through its last known registered agent in Montgomery, Alabama, on November 6, 2023.[4] (Doc. 23 at 2).  The Plaintiffs then discovered that the registered agent had its authority to receive service revoked in 2003. (*See id.* at 3); (*see also* 23-1). After this attempt at service, the Plaintiffs claimed they "attempted to locate the registered agent for Defendant [HMC] to no avail." (Doc. 23 at 3).  Then, "Plaintiffs' counsel made a diligent effort to confirm whether Defendant [HMC] was a proper party to this matter." (*Id.*).  Plaintiffs' counsel then conferred with opposing counsel and discovered that HMC

---

[3] HMA does not deny that it is a proper party to the suit and was properly served.  HMA answered the complaint (doc. 5) and has participated in the litigation.

[4] The Plaintiffs do not explain why they believed HMC had a registered agent in Alabama.

was in fact a proper party. (*Id.*).   After confirming HMC was a proper party, Plaintiffs' counsel proceeded to perform a search "on the Alabama Secretary of State's website and located a 'Foreign Corporation Application for Certificate of Withdrawal'" which stated that HMC could be served at the mailing address of "Hyundai Motor America, c/o Legal Department, 10550 Talbert Avenue, Fountain Valley, California 92708." (*Id.* at 3–4). Plaintiffs then used a process server to deliver documents to HMA's address. (*Id.* at 4). The Certificate of Withdrawal, attached to the response to the April 11, 2024 show cause order, states in relevant part that HMC "revokes the authority of its registered agent in Alabama to accept service of process and consents that service of process of any action, suit, or proceeding based upon any cause of action during the time the corporation was authorized to transact business in Alabama may thereafter be made on the corporation by service on the Secretary of State of Alabama." (*See* doc. 22-2).   Then, "the Secretary of State may forward a copy of any process served against the corporation." (*Id.*).   The Certificate of Withdrawal is dated October 27, 2003. (*Id.*).

The next week, on April 17, 2024, the Court ordered the Plaintiffs to file proof of service on HMC on or before April 24, 2024. (Doc. 24).   The Plaintiffs filed an affidavit the same day which claimed to show proper service on HMC. (*See* doc. 25).   The affidavit claimed that a process server gave the summons to the "Legal Department" of "Hyundai Motor Company, Inc. at 10550 Talbert Ave. Fountain Valley, CA 92708 on 04/10/2024 at 1:13 PM." (Doc. 25).   HMA's headquarters are in Fountain Valley, California. (*See* doc. 33-2 at 2).   The affidavit added that the process server "delivered the documents to Reception[.]   No [one] [f]urther . . . identified themselves as the person authorized to

4

accept [service] . . . .   The individual accepted service by placing [the documents] on [the] reception counter." (*Id.*).

HMC disputes that it was properly served and filed its motion to dismiss on May 1, 2024, requesting that the case against HMC be dismissed for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), insufficient process under Rule 12(b)(4), lack of personal jurisdiction under Rule 12(b)(2), failure to state a claim under Rule 12(b)(6), and claim preclusion.[5] (*See generally* doc. 26).   HMC attached an affidavit from Matthew Little, Vice President of Human Resources & Administrative Services for HMA, to support its claim that HMA and HMC are distinct entities. (Doc. 26-1).   The Plaintiffs sought an extension to respond, (doc. 30), which this Court granted (doc. 31), and the Plaintiffs filed their response on July 23, 2024 (doc. 33).   The Plaintiffs argue that they properly served HMC through HMA, HMC's subsidiary. They claim to have shown a relationship between HMA and HMC which exceeds the normal parent-subsidiary relationship, effectively making HMA an "alter ego" of HMC. (Doc. 33 at 2).   In support of this proposition, the Plaintiffs produced the following evidence: (1) a screenshot of a webpage of José Muñoz, HMA's president and chief executive officer and HMC's president and global chief operating officer (doc. 33-1); (2) a press release announcing José Muñoz's positions with HMC and HMA (doc. 33-2); and (3) HMC's financial reports

---

[5] Because the Court resolves the motion under Rule 12(b)(5), it does not address HMC's other arguments for dismissal.

which include HMA's earnings (doc. 33-3).[6]  HMC claims that HMA is not its involuntary agent, so HMA cannot accept service on HMC's behalf. (*See* doc. 26).

On September 25, 2024, the Plaintiffs filed a motion to compel and motion for jurisdictional discovery from HMC, (doc. 39), which HMC opposed (doc. 42).   The Plaintiffs replied on October 29, 2024. (Doc. 43).

After considering the arguments of both parties, the Court finds that the Plaintiffs neither properly served HMC nor are entitled to jurisdictional discovery concerning the corporate relationship between HMA and HMC.  Because the Court finds the Plaintiffs did not properly serve HMC, the Court dismisses the Plaintiffs' claims without prejudice.

### III.  LEGAL STANDARD

Rule 12(b)(5) allows a defendant to challenge a plaintiff's method of serving process. *See* FED. R. CIV. P. 12(b)(5).  While Rule 4(f) does not provide a specified time for service of a foreign entity, the Eleventh Circuit, in an unpublished opinion, has joined other circuits and held that "a plaintiff's complaint may be dismissed upon a showing that she failed to exercise diligence in attempting to effectuate service on a foreign defendant." *Harris v. Orange S.A.*, 636 F. App'x 476, 485–86 (11th Cir. 2015).[7]

To evaluate whether HMC was properly served, the Court may look beyond the four corners of the pleadings and consider additional evidence. *See Bryant v. Rich*, 530 F.3d

---

[6] The Plaintiffs attached additional exhibits to their response, but the exhibits are unrelated to the parent-subsidiary claim. (*See* doc. 33-3–33-6).  Thus, the Court does not consider them for the purpose of evaluating HMC and HMA's relationship.

[7] Here, and elsewhere in this Memorandum Opinion, the Court cites nonbinding authority.  While the Court recognizes that these cases are nonprecedential, the Court finds them persuasive.

1368, 1376 (11th Cir. 2008) ("[I]t is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."). The Court makes limited factual findings to resolve "questions raised by the affidavits or other evidence presented." *Id.* (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 at 340, 345 (3d ed. 2004)). "Once the sufficiency of service is brought into question, the plaintiff has the burden to prove proper service of process." *See Familia de Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980) (citation omitted),[8] *abrogated on other grounds by Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982); *see also Hyundai Merch. Marine Co. v. Grand China Shipping (Hong Kong) Co.*, 878 F. Supp. 2d 1252, 1263 (S.D. Ala. 2012).

## A.      Service on a Foreign Entity

Federal Rule of Civil Procedure 4(f) governs service on an individual in a foreign country. HMC is a corporation organized in Korea and thus subject to the service requirements in Rule 4(f), namely, the requirements of the Hague Convention, absent court order.[9] *See* FED. R. CIV. P. 4(f)(1) ("[A]n individual . . . may be served at a place not within any judicial district of the United States:  (1) by any internationally agreed means of service

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[9] Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice that Korea is a signatory of the Hague Convention. *See* FED. R. EVID. 201(b). *Cf. Pettaway v. Miami Int'l, Inc.*, 624 F. Supp. 3d 1268, 1277 n.7 (M.D. Fla. 2022); *Telebrands Corp. v. GMC Ware, Inc.*, 2016 WL 6237914, at *4 n.3 (C.D. Cal. Apr. 5, 2016).

that is reasonably calculated to give notice, such as those authorized by the Hague Convention.").  The Hague Convention established rules to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (citation omitted).  Article 2 of the Convention requires "each contracting country 'designate a Central Authority which [ ] undertake[s] to receive requests for service coming from other countries' to the agreement." *Winston v. Walsh*, 829 F. App'x 448, 451 (11th Cir. 2020) (quoting Hague Service Convention art. 2, Nov. 15, 1965, 20 U.S.T. 261) (alteration in original).  The Central Authority then serves the defendant according to the laws of the foreign country and issues a certificate that confirms service. *Id.* (quoting Hague Service Convention, art. 6, 20 U.S.T. 361).

**B.     Service on a Foreign Parent Company Through a Domestic Subsidiary**

"Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, [the court's] inquiry ends and the [Hague] Convention has no further implications." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988).  The Plaintiffs, therefore, could serve HMC by Alabama's service laws so long as the method of service did not violate the Due Process Clause or require sending documents abroad. *See Schlunk*, 486 U.S. at 700 ("If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies.").  Alabama's statute for service in a foreign country mirrors the federal rule and includes the "means authorized by the Hague Convention" language. ALA. R. CIV. P. 4.4; *compare* ALA. R. Civ. P. 4.4 *with* FED. R. CIV. P. 4(f).  But "Alabama law authorizes service of process on a company located in a foreign

country by serving its domestic subsidiary in certain limited circumstances." *Foster v. Bridgestone Americas, Inc.*, 2011 WL 3606983, at *2 (S.D. Ala. Aug. 15, 2011) (citing *Ex parte Volkswagenwerk Aktiengesellschaft*, 443 So. 2d 880, 884 (Ala. 1983)).

Under Alabama law, "[t]he party seeking to prove proper service must at least show that the parent corporation exercises such control and domination over the subsidiary that it no longer has a will, mind or existence of its own, and operates merely as a department of the parent corporation," or "the party may show that the parent corporation has complete control over the subsidiary, conducting its business and creating its policies . . . (or the subsidiary) is a mere adjunct and instrumentality of the parent . . . (or the) subsidiary corporation is merely a 'dummy' by means of which the parent corporation does business in the state." *Ex parte Volkswagenwerk*, 443 So. 2d at 884 (alteration in original) (citations omitted). In fact, "the parent-subsidiary relationship alone is not ordinarily enough to establish agency for the purpose of service of process." *Bank of Am. Corp. v. Edwards*, 881 So. 2d 403, 406 (Ala. 2003) (citation omitted). Alabama courts consider a nonexclusive list of ten factors to determine whether a parent corporation exercises such control over a subsidiary that service of a subsidiary as an involuntary agent is sufficient for service of the parent corporation:

    a)    The parent corporation owns all or most of the capital stock of the subsidiary;

    b)    the parent and subsidiary corporations have common directors or officers;

    c)    the parent corporation finances the subsidiary;

    d)    the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

    e)    the subsidiary has grossly inadequate capital;

f)     the parent corporation pays the salaries and other expenses or losses of the subsidiary;

g)     the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

h)     in the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

i)     the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation; and

j)     the formal legal requirements of the subsidiary are not observed.

*Edwards*, 881 So. 2d at 407–08.

## C.     Dismissal of a Claim for Failure to Effect Timely Service

"[W]hen a district court finds that a plaintiff fails to show good cause for failing to effect timely service pursuant to Rule 4(m), the district court must still consider whether any other circumstances warrant an extension of time based on the facts of the case. Only after considering whether any such factors exist may the district court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time." *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007). While service on a foreign corporation is exempted from the time constraints enumerated in Rule 4(m), a plaintiff must "exercise diligence in attempting to effectuate service on a foreign defendant" or risk dismissal of the foreign defendant. *Harris*, 636 F. App'x at 486. A court may extend the period for service if a plaintiff shows good cause, i.e., that "some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey*, 476 F.3d at 1281 (quoting *Priso v.*

10

*Frank*, 929 F.2d 603, 604 (11th Cir. 1991) (per curiam)).  But a mistaken interpretation of law regarding a proper method of service is not good cause. *Cf. Prewitt Enters., Inc. v. Org. of Petroleum Exporting Counties*, 353 F.3d 916, 921–25 (11th Cir. 2003); *Winston v. Walsh*, 829 F. App'x 448, 451–52 (11th Cir. 2020).  "Even in the absence of good cause, a district court has the discretion to extend the time for service of process." *Lepone-Dempsey*, 476 F.3d at 1281.  A district court must "consider whether any other circumstances warrant an extension of time based on the facts of the case. . . .  Although the running of the statute of limitations . . ., does not require that the district court extend time for service of process . . ., it [is] incumbent upon the district court to at least consider this factor." *Id.* at 1282.

**D.    Jurisdictional Discovery**

Parties may seek discovery "to ascertain the facts bearing on [jurisdictional] issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978).  In fact, "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982) (internal citations omitted).  When the facts sought "go to the merits[,] and the court's jurisdiction [is] . . . genuinely in dispute, parties have a 'qualified right to jurisdictional discovery.'" *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (quoting *Eaton*, 692 F.2d at 729 n.7).  But a district court need not grant jurisdictional discovery when the party seeking discovery "unduly delayed in propounding discovery or seeking leave to initiate discovery." *Id.* (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999)).

11

## IV.  DISCUSSION

**A.**     **Service on HMC Through the Hague Convention**

HMC argues—and the Plaintiffs do not dispute—that the Plaintiffs failed to serve HMC through the procedures outlined in the Hague Convention.  There is insufficient evidence in the record to suggest that the Plaintiffs ever sent summons to the Central Authority in Korea to serve on HMC.  Based on the evidence before it, the Court finds the Plaintiffs did not serve HMC in accordance with Federal Rule of Civil Procedure 4(f) or Alabama Rule of Civil Procedure 4.4.

**B.**     **Service on HMC (Parent) Through HMA (Subsidiary)**

The Plaintiffs' only remaining argument for proper service is that they served HMC through its agent, HMA.  As stated above, the Plaintiffs bear the burden of showing HMA is an agent of HMC to make service proper. *See Familia de Boom*, 629 F.2d at 1139.  The Plaintiffs' argument depends on whether HMA qualifies as an involuntary agent authorized by law to accept service.  In support, the Plaintiffs offer two sources of evidence:  José Muñoz's roles in both corporations and HMC's earning report, which included HMA's financial records. (Docs. 33-1, 33-2, and 33-3).  To rebut this idea, HMC offered the declaration of HMA Vice President of Human Resources and Administrative Services, Matthew Little. (Doc. 26-1).

Upon consideration of the evidence, the Plaintiffs do not carry their burden to demonstrate that HMC exerts "complete control" over HMA beyond the normal parent-subsidiary relationship to the point that HMA is a mere "dummy" of HMC. *See Ex parte Volkswagenwerk*, 443 So. 2d at 884.  In *Ex parte Volkswagenwerk*, the Alabama Supreme

Court held that a German parent corporation had "complete control" over its American subsidiary to make service on the subsidiary effective on the parent corporation. *Id.* at 884–85.  Specifically, the plaintiff produced an importer agreement that showed the German parent corporation had "control over marketing strategy, product availability, advertising, dealer supervision, staffing, price, and warranty policy. . . .  [The subsidiary] retain[ed] no independence in carrying out its substantive business." *Id.* at 886 (Torbert, C.J. concurring specially).  Further, the board of directors of the American subsidiary held "almost all of its meetings in Wolfsburg, West Germany," the headquarters of the German parent corporation. *Id.* at 884.  Because the parent corporation exerted such a high level of control over its subsidiary, service on the American subsidiary qualified as service on the German parent corporation.

Confronted with the same question of whether a foreign parent corporation exerted "complete control" over a domestic subsidiary, the Southern District of Alabama applied the Alabama precedent but reached the opposite conclusion. *See Foster*, 2011 WL 3606983.  In *Foster*, the court found Mazda America did not serve as an involuntary agent for its parent company, Mazda Japan. *Id.* at *6.  Thus, service on Mazda America did not constitute service on Mazda Japan. *See id.*  The plaintiff presented consolidated financial reports, corporate ethics and guidelines applicable to both Mazda America and Mazda Japan, Mazda Japan's total ownership of Mazda America, and Mazda Japan's ability to exercise control over its subsidiary through majority voting rights. *Id.* at *3–4.  Although the court found the businesses were "interwoven," the record evidence did not show that

13

Mazda Japan exercised the level of control present in *Ex parte Volkswagenwerk* that exceeded a normal parent-subsidiary relationship. *Id.* at *5.

In its affidavit, HMC shows:  (1) HMA is a distributor of Hyundai motor vehicles; (2) HMA and HMC are separate corporations; (3) "HMA does not have authority to accept service of process for  HMA"; (4) HMA has complete control of the day-to-day operations of HMA; (5) HMA maintains its own records; (6) HMA keeps a separate payroll of its employees with its own benefit plans separate from HMC; and (7) HMA pays its own debts and expenses. (*See* doc 26-1 at 2).  The Plaintiffs' exhibits show:  (1) HMC owns all the stock of HMA (doc. 33-3), and (2) the two companies share a common director and executive (doc. 33-1, 33-2).  Without more, the Plaintiffs' argument fails.

The factors enumerated in *Bank of America Corporation v. Edwards* guide the Court's inquiry into whether the relationship between HMA and HMC extends beyond the normal parent-subsidiary relationship, which is insufficient to establish agency. *See Edwards*, 881 So. 2d at 406 (quoting *Jones v. Volkswagen of America, Inc.*, 82 F.R.D. 334, 335 (E.D. Tenn. 1978)).  Of the ten factors listed in *Edwards*, the Plaintiffs have shown three:[10] (1) HMC owns all the capital stock of HMA; (2) HMA and HMC share an officer; and (3) HMC has described HMA as a part of its operations in the press releases identified by the Plaintiffs.  Other factors weigh in favor of HMA: (1) HMC does not completely finance HMA; (2) HMA has adequate capital; (3) HMA pays its own employees' salaries and offers its own employee benefits; (4) HMA's executives run HMA's daily operations;

---

[10] The Alabama Supreme Court noted that this list is not exhaustive, and the Court focuses on the factors it finds relevant in the evidence and arguments presented by the parties. *See Edwards*, 881 So. 2d at 406.

(5) the formal legal requirements of HMA are observed; and (6) the executive the Plaintiffs identified as part of both companies resides and works in HMA's headquarters. (*See* docs. 26-1 at 2–3, 33-2).

Furthermore, the Court finds the evidence presented in this case shows HMA and HMC's parent-subsidiary relationship resembles the business relationship in *Foster* more than the relationship in *Ex parte Volkswagenwerk*. Like Mazda America in *Foster*, HMA retains much of its independence despite HMC's complete ownership of HMA's stock. HMA has all the characteristics of a separate corporation operating independently of its parent in day-to-day operations: maintaining its own records, keeping a separate payroll, offering its own employee-benefit plans, and paying its own debts and expenses. (Doc. 26-1 at 2–3). That HMC owns all the stock of HMA, shares a common director and executive with HMA, and includes HMA's financials in its reports does not establish that this relationship goes beyond the normal parent-subsidiary relationship such that the parent exerts "complete control" over the subsidiary. *See Foster*, 2011 WL 3606983, at *5–6. The characteristics of the relationship that went beyond the normal parent-subsidiary relationship present in *Ex parte Volkswagenwerk*—namely, an importer agreement that gave the parent corporation complete control of daily operations of the subsidiary, among other things—are not the facts of this case. *See Ex parte Volkswagenwerk*, 443 So. 2d at 883–85 ("Numerous requirements in the 'Importer Agreement' show that [the parent] determines how [subsidiary] operates on a daily basis."). Without such control, the Court finds that the reasoning in *Foster* is more applicable and that HMC has not made

HMA its involuntary agent for the purposes of receiving process, making the Plaintiffs' attempt at service invalid.

## C.    Dismissal of Plaintiffs' Claims

The Plaintiffs' reliance on a mistaken interpretation of Alabama law to show proper service of a foreign defendant supports the dismissal of Plaintiffs' claims under Rule 12(b)(5), even though dismissal would operate as a dismissal with prejudice for Kyejuana Avery's tort claims, *see* Ala. Code § 6-2-38 (establishing two-year statute of limitations). Further, the Court does not find an adequate reason to extend the time for Plaintiffs to serve HMC.  In *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, the Eleventh Circuit affirmed the district court's granting of a motion to dismiss for improper service when the plaintiff misinterpreted Austrian service laws and argued that it properly served a foreign defendant based on its misinterpretation. 353 F.3d at 920–29 (11th Cir. 2003).  The Plaintiffs here have demonstrated a similar misunderstanding of the service requirements of Alabama law and suffer the same fate.

Because HMC was not properly served, the Court has two options under Federal Rule of Civil Procedure 4:  "dismiss the case without prejudice or direct that service be effected within a specified time." *See Lepone-Dempsey*, 476 F.3d at 1282.  Based on the record, the Court finds dismissal is the proper remedy.  The record reflects a series of mistakes and inaction that show anything but "diligence in attempting to effectuate service." *Harris*, 636 F. App'x at 486.  Indeed, the record shows that "negligence[ ] prevented service" on HMA. *Lepone-Dempsey*, 476 F.3d at 1281 (citation omitted).

Because of the Plaintiffs' inability to diligently pursue service on HMC, the Court finds dismissal is the appropriate remedy.

Upon a view of the totality of the circumstances of the case, the Court finds that no factor listed in the Advisory Committee notes of Rule 4, or any other factor, warrant an extension of time. *See* FED. R. CIV. P. 4(m), Advisory Committee Note, 1993 Amendments (noting that an extension may be justified "if the applicable statute of limitations would bar the refiled action," "the defendant is evading service," the plaintiff is pro se, or "correct[ing] oversights in compliance with service . . . [on] the United States or its officers, agencies, and corporations").

The Court briefly summarizes the facts of Plaintiffs' attempts to serve HMC. When Plaintiffs filed the case in state court, they attempted to serve HMC's registered agent in Montgomery, Alabama, which was rejected on November 6, 2023, (doc. 23 at 2–3), because the agent was no longer registered to receive service for HMC, (doc. 23-2). The Plaintiffs then claim they "attempted to locate the registered agent" for HMC "to no avail" while also "ma[king] a diligent effort to confirm whether [HMC] was a proper party to this matter." (Doc. 23 at 3). But Plaintiffs' claims do not articulate what steps they took to ascertain this information and simply offer conclusory statements.

In December of 2023, the case was removed to this Court, and HMA argued that HMMA was a fraudulent party because it did not manufacture the Plaintiffs' vehicle. (Doc. 1 at 3). At this point, the Plaintiffs should have understood that HMC was, at a minimum, *very* likely to be a proper party to the case. But Plaintiffs continued to neglect

actively pursuing service despite naming HMC as a defendant in the case (doc. 1-3 at 2) and knowing that HMA believed HMC had not been served (doc. 1 at 3).

From December of 2023 until April of 2024, the Plaintiffs took no further action towards HMC despite an Order directing the Plaintiffs "to effectuate service of process on all named defendants[, including HMC,]" by February 23, 2024. (Doc. 10)  It was not until the Court issued a second Order requiring the Plaintiffs to serve HMC or show cause why HMC should not be dismissed for failure to prosecute on April 5, 2024, (doc. 22), that the Plaintiffs acted.  According to the Plaintiffs, they served HMC on April 10, 2024, by serving process according to HMC's Certificate of Withdrawal from Alabama. (Doc. 23 at 3–4).  But the Plaintiffs did not even follow the procedure listed in the Certificate of Withdrawal, which requires mailing process to the Secretary of State of Alabama who then forwards it to the agent identified in the Certificate of Withdrawal. (*See* doc. 23-2).  Instead, the Plaintiffs delivered documents to HMA's headquarters, (doc. 23 at 4), which was identified as the voluntary agent for receiving summons for any action "arising in Alabama during the time [HMC] was authorized to transact business in Alabama," which ended in 2003 (doc. 23-2). The Certificate of Withdrawal, therefore, was not the proper method for service for a lawsuit arising out of events that occurred in 2021, eighteen years after 2003.  Even if it was, the Plaintiffs failed to follow its outlined procedure. (*See* doc. 23-2).

Even after HMC filed its motion to dismiss for improper service on May 5, 2024, and outlined the deficiencies in the Plaintiffs' service, the Plaintiffs still refused to use the simplest, clearest way to serve HMC:  the process outlined in the Hague Convention and

approved by the Federal Rules of Civil Procedure (which is not subject to the time constraints of Rule 4(m)). The Plaintiffs' decision to pursue service through an agency theory under a mistaken interpretation of Alabama law instead of following the rules of service of both the Alabama and the Federal Rules of Civil Procedure has spilled unnecessary ink, prolonged this litigation, and supports dismissal. *See Harris*, 636 F. App'x at 485–86.

The fact that HMC has not engaged in any subterfuge that would prevent the Plaintiffs' service of it reinforces the Court's decision. *See* FED. R. CIV. P. 4(m), Advisory Committee note, 1993 Amendments (noting that extension may be warranted "if the defendant is evading service or conceals a defect in attempted service" (citation omitted)). HMA and HMMA have recognized that HMC would be a proper party to the case if served because it manufactured the vehicle at issue. (*See* doc. 18) (joint dismissal of HMMA). HMC never tried to hide that it, and not HMMA, manufactured the vehicle. (*Id.*). HMA also informed the Plaintiffs that HMC had not been properly served in its notice of removal, (*see* doc. 1 at 3), and the Plaintiffs were already aware that their first attempt at service failed (doc. 23 at 2–3). HMC did not use the corporate veil to attempt to deflect liability or claim ignorance.

While HMC was aware of the case and has participated in a limited capacity, HMC never waived its right to nor received proper service. Despite Plaintiffs' claims that "legal notice" is sufficient for HMC to be brought into the suit, (doc. 33 at 6 n.1), "notice is not service." *Hyundai Merchant Marine*, 878 F. Supp. 2d at 1256–57 (citing *E. Asiatic Co. v. Indomar, Ltd.*, 422 F. Supp. 1335, 1339–41 (S.D.N.Y. 1976)). And service—not just

19

notice—is necessary for the Court to exercise jurisdiction over a party. *See Prewitt*, 353 F.3d at 925.  Instead of following clear, enumerated procedures for service outlined in both the Alabama and Federal Rules of Civil Procedure, the Plaintiffs elected to pursue a theory of service predicated on complete corporate control.  Their decision has delayed this litigation, and their continued pursuit of the agency theory through a motion to compel and a motion for jurisdictional discovery shows that dismissal is the proper remedy.

When service of process is at issue, the plaintiff carries the burden to show proper service. *See Familia de Boom*, 629 F.2d at 1139.  Based on the facts presented, the Court finds that the Plaintiffs do not prove that HMC exerts the requisite level of control over HMA to make HMA an involuntary agent of HMC for the purpose of serving process.  The Plaintiffs' attempt to serve HMC through HMA was therefore inadequate.  As the Supreme Court warned in *Schlunk*, "[t]hose who eschew [the Hague Convention's] procedures risk discovering that the forum's internal law required transmittal of documents for service abroad, and that the Convention therefore provided the exclusive means of valid service." 486 U.S. at 706.  Consequently, while possible to serve a parent corporation through its subsidiary under Alabama law, the Plaintiffs ran the risk of ignoring the procedures of the Convention and failed to show proper service as a result.  Thus, HMC's motion to dismiss the Plaintiffs' claims is due to be granted for insufficient service of process pursuant to Rule 12(b)(5).

The Court reaches this conclusion after weighing the fact that Plaintiff Kyejuana Avery would be barred from refiling her tort claims because the statute of limitations has expired. *See* Ala. Code §6-2-38.  "Although the statute of limitations, which barred the

plaintiffs from refiling their claims, does not require that the district court extend time for service of process under Rule 4(m), it [is] incumbent upon the district court to at least consider this factor." *Lepone-Dempsey*, 476 F.3d at 1282.  The Court weighs this factor and still finds that dismissal is the appropriate remedy.

The Plaintiffs' actions since the filing of this suit have not shown a diligent pursuit of service.  The Plaintiffs knew their first attempt at service failed, waited five months after the filing of their complaint to attempt to serve HMC through HMA, implicitly admitted their argument of HMC's complete control lacked sufficient support when they filed the response to HMC's motion to dismiss by seeking jurisdictional discovery as the only way "[t]o fully understand" the relationship between HMA and HMC, (doc. 39 at 1), and refused to use the clear procedures outlined in the Hague Convention.  The Plaintiffs' lack of diligence supports the Court's dismissal even though dismissal bars the refiling of Plaintiff Kyejuana Avery's tort claims.  No circumstance identified by the Plaintiffs' briefing or independently by the Court supports giving the Plaintiffs additional time to serve HMC.  Dismissal is appropriate.

## D.    Plaintiffs' Motion for Jurisdictional Discovery

The Plaintiffs' attempt to compel jurisdictional discovery is simply without merit. The Plaintiffs argue that this discovery is necessary for them to obtain additional information that will unveil the close ties between HMC and HMA to show that service was proper on HMC through HMA. (*See* doc. 39).  As shown in the exhibits attached to the motion, HMC opposed Plaintiffs' request to depose José Muñoz, the Plaintiffs' only

21

identified connection between HMC and HMA.[11] (Docs. 39-1, 39-2, 39-3).  The exhibits further show that these requests of HMC did not occur until September 17, 2024, almost two months after the Plaintiffs filed their response to the motion to dismiss. (Doc. 39-1 at 1).  The Plaintiffs then sought the Court's relief on September 25, 2024. (Doc. 39).  The untimeliness of this request is exacerbated by the fact that the Court extended the deadline for the Plaintiffs to file their response to the motion to dismiss from May of 2024 until July of 2024. (Doc. 31).  Because of the length of this delay, the Court finds that the Plaintiffs' motion for jurisdictional discovery over four months after the filing of the original motion to dismiss is untimely. *See Posner*, 178 F.3d at 1214 n.7 (rejecting motion for jurisdictional discovery when the complaint was filed seven and a half months prior and the motion to dismiss was filed five months prior).  Regardless of timing, the Plaintiffs claim this request is proper because it raises a jurisdictional issue. (*See* doc. 39 at 1).  While the Plaintiffs are correct that it raises a jurisdictional issue, they are mistaken about their ability to access it.

*Lowery v. Alabama Power Company* is instructive.  In *Lowery*, the defendant sought to remove the case to federal court and use jurisdictional discovery to establish that the amount in controversy was sufficient to create subject-matter jurisdiction upon the plaintiff's motion to remand the case to state court. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215–18 (11th Cir. 2007).  The Eleventh Circuit affirmed the district court's decision to reject the defendant's pursuit of jurisdictional discovery to establish the amount-in-

---

[11] The Court recognizes that in its response filed on July 23, 2024, the Plaintiffs did state that they "requested a deposition of Mr. José Muñoz and are waiting for available dates" but did not request the Court's leave to take such action. (Doc. 33 at 4).

controversy requirement. *Id.* at 1218.  In relevant part, the panel noted that "[t]he court should not reserve ruling on a motion to remand in order to allow the defendant to discover the potential factual basis of jurisdiction.  Such fishing expeditions would clog the federal judicial machinery . . . ." *Id.* at 1217.  A similar principle is at issue here.  Allowing the Plaintiffs to pursue this theory would permit plaintiffs to serve foreign parent corporations through a domestic subsidiary and file for jurisdictional discovery, which would unnecessarily delay the adjudication of the merits of the case.  When a clearly established option already exists under both the Federal and the Alabama Rules of Civil Procedure— service according to the Hague Convention—, the Court declines to approve of a fishing expedition that would do nothing more than prolong this litigation and gather information that is irrelevant to the merits of the underlying claims.

The Plaintiffs argue that the Court cannot make a proper decision based on the record before it without additional facts underlying the business relationship between HMA and HMC.[12]  The Court disagrees.  There is sufficient evidence in the record to show that HMC does not exercise the same level of control as the parent corporation in *Ex parte Volkswagenwerk* to make HMA the involuntary agent of HMC.  The Court's conclusion is further bolstered by the delay in the Plaintiffs' request for leave to conduct such discovery—over eight months after removal of the case to federal court, (doc. 1), over four

---

[12] Again, the Court notes that this argument for jurisdictional discovery belies any attempts by Plaintiffs to claim that they diligently pursued service of HMC.  If the Plaintiffs believe the Court does not have sufficient information before it in December of 2024 to decide if HMA and HMC have a relationship beyond the normal parent-subsidiary, the Plaintiffs did not have such information available to them in April of 2024 to believe that they properly served HMC under the theory of service through a domestic subsidiary.

months after the filing of the initial motion to dismiss, (doc. 26), and two months after they filed their response to the motion to dismiss (doc. 33). The Plaintiffs waited too long to make this request and seek information that would support the validity of their service but not address the underlying merits of the case.  The Plaintiffs, under the facts here, do not have "a qualified right" to such information. *ACLU of Fla.*, 859 F.3d at 1341.

The Plaintiffs' discovery requests are not required for the Court to exercise jurisdiction but simply arise from the Plaintiffs' refusal to use the clearly established procedure to serve a foreign corporation.  The Court will not indulge a request for jurisdictional discovery under these circumstances and "clog the federal judicial machinery" even further. *Lowery*, 483 F.3d at 1217.

## V.  CONCLUSION

Accordingly, having found the Plaintiffs did not properly serve HMC under either the Federal Rules of Civil Procedure or the Alabama Rules of Civil Procedure, it is ORDERED as follows:

1.  HMC's motion to dismiss (doc. 26) is GRANTED to the extent that the Plaintiffs' claims against HMC are dismissed without prejudice;

2.  the Plaintiffs' motion for oral argument (doc. 34) is DENIED; and

3.  the Plaintiffs' motion to compel and motion for jurisdictional discovery (doc. 39) are DENIED.

Done this 2nd day of December, 2024.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

24